UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TYREEM FOSQUE**,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>**DISTRICT OF COLUMBIA HOUSING<br>AUTHORITY**,<br><br>　　　　　Defendant. | Case No. 1:25-cv-03515 (TNM) |

## <u>MEMORANDUM ORDER</u>

Tyreem Fosque worked as a police officer for the District of Columbia Housing Authority. His tenure lasted only about two years. Things went awry after another male officer accused Fosque of sexual assault—which led the D.C. Housing Authority to investigate, suspend, and ultimately fire him. Fosque insists that the accusation was false. He also asserts that the D.C. Housing Authority fired him because he is gay. Fosque now advances claims of disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act and the D.C. Human Rights Act. The D.C. Housing Authority moves to dismiss. The Court denies that motion. At this early stage, Fosque has alleged enough.

**I.**

In late 2021, Tyreem Fosque began working as a Special Police Officer for the D.C. Housing Authority's police department. Compl., ECF No. 1, ¶ 10. He maintains that he "performed his duties excellently, without any performance issues or complaints." *Id.* ¶ 11. According to Fosque, his "sexual orientation as a gay man was common knowledge throughout" the department. *Id.* ¶ 12.

In early 2024, Officer Don Williams reported that Fosque had sexually assaulted him at work. *Id.* ¶ 13. Fosque "categorically denies ever assaulting, harassing, or even touching Williams." *Id.* ¶ 15. In his telling, "Williams continued to act friendly toward [Fosque] after the alleged incident, including texting [him] 'Merry Christmas' on December 25, 2023, 'Happy New Year' on January 1, 2024, and wishing [him] a happy birthday on January 9, 2024." *Id.* ¶ 16.

Shortly after the report, the D.C. Housing Authority placed Fosque on administrative leave with pay, followed by "suspension without pay pending an investigation by the Metropolitan Police Department." *Id.* ¶¶ 17–18. One month later, the Metropolitan Police Department "determined there was insufficient evidence to meet the elements of a sexual abuse offense and closed its investigation," and the D.C. Housing Authority returned Fosque to administrative leave with pay. *Id.* ¶¶ 19–20.

Two more months went by until Fosque received a Proposed Notice of Termination. *Id.* ¶ 21. As Fosque tells it, the Proposed Notice "was based largely on statements from Officer Kenneth Matthew, who claimed [Fosque] had admitted to the assault." *Id.* ¶ 22. Fosque "denies ever making such admissions to Matthew or anyone else." *Id.* ¶ 23. He appealed his proposed termination via email to Police Chief Michael Reese, "asserting that the allegations against him were false and motivated by discrimination." *Id.* ¶¶ 24, 76. To no avail: Three months later, the police department terminated Fosque, "falsely claiming they never received his appeal." *Id.* ¶ 27. Williams, meanwhile, continued to serve at the police department—despite Fosque's claim that he received a text from another officer "stating he had recordings of Williams admitting he 'made the whole thing up.'" *Id.* ¶¶ 25–26.

Fosque now sues the D.C. Housing Authority.[1]  He advances claims of disparate treatment, hostile work environment, and retaliation—each under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, and the D.C. Human Rights Act, D.C. Code §§ 2-1402.11, *et seq.*[2]  Compl. ¶¶ 32–87.  The D.C. Housing Authority moves to dismiss, and that motion is ripe.

## II.

In considering a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see* Fed. R. Civ. P. 12(b)(6).  The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).  But the Court need not credit "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Assessing whether a claim survives dismissal is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 21 (D.D.C. 2018) (quoting *Iqbal*, 556 U.S. at 679), *aff'd sub nom.*, *Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019).

---

[1]  Fosque also tries to sue the D.C. Housing Authority's police department.  But the police department is subsumed within the D.C. Housing Authority and thus is not a proper defendant. *See Roberson v. D.C. Bd. of Higher Educ.*, 359 A.2d 28, 31 n.4 (D.C. 1976) (explaining that an entity within D.C. government may be sued only if it is statutorily a separate legal entity); D.C. Code § 6-202(a) (establishing D.C. Housing Authority "as an independent authority of the District government").  The Court will thus dismiss the department.

[2]  Before launching suit, Fosque filed a timely complaint with the Equal Employment Opportunity Commission, which gave him a right-to-sue letter.  Compl. ¶¶ 4–5.

### III.

The Court will address Fosque's claims of disparate treatment, hostile work environment, and retaliation in that order.

### A.

Start with disparate treatment. Title VII bars the federal government and the District of Columbia from discriminating against their employees "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 644 (2020) (holding that Title VII extends to sexual orientation). "[T]he Court's analysis is the same" under Title VII and the D.C. Human Rights Act. *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 10 n.4 (D.D.C. 2008) (collecting cases).

"[T]he two essential elements of a [Title VII] discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, [or] national origin . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Kavanaugh, J.). The "pleading burden is not great, and courts in this Circuit have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive a motion to dismiss." *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) (cleaned up); *see also Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) ("The burden at the summary judgment stage and at trial is different and substantially more onerous than the pleading burden.").

Fosque carries that burden. By his account, it was "common knowledge" throughout the police department that he is gay. Compl. ¶ 12. Fosque's otherwise successful tenure was cut short when another officer accused him of sexual assault—an accusation that Fosque alleges is false. *Id.* ¶¶ 13, 15. At this stage, the Court credits Fosque's version and his allegation that

another officer admitted Williams "made the whole thing up." *Id.* ¶ 26; *see Xia*, 865 F.3d at 649. Fosque also alleges that his treatment—a suspension followed by termination—stands in contrast to "heterosexual male [D.C. Housing Authority] officers, including Darnell Douglass and Harold Yeager, [who] faced multiple well-supported complaints of sexual harassment and assault but were not terminated." Compl. ¶¶ 18, 27–28.

Taken together and construed in Fosque's favor, these allegations "nudge his claim[s] across the line from conceivable to plausible." *See Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024) (cleaned up). Fosque plausibly alleges that the police department knew that he is gay and treated him "less favorably than similarly situated" heterosexual officers. *See Nanko Shipping*, 850 F.3d at 467; *see also Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529–30 (D.C. Cir. 2025) (ruling that plaintiffs need not "demonstrate that all of the relevant aspects of [their] employment situation were nearly identical to those of the comparators" at dismissal stage (cleaned up)).

Beyond the comparators, Fosque also offers facts to support his allegation that the sexual assault report—the purported basis for his termination—was willfully untrue. *See* Compl. ¶¶ 23, 26. In this respect, Fosque's claims rest on more than a comparator theory. For now, Fosque's disparate treatment claims thus survive. *See, e.g.*, *Fennell*, 770 F. Supp. 2d at 127–29 (holding that plaintiff "satisfied his pleading burden" for race and sex discrimination where he alleged "that his job performance throughout his career was impeccable" and that he was terminated based on false allegations).

**B.**

Turn to Fosque's hostile work environment claims. "To establish a prima facie hostile work environment claim, [a] plaintiff must demonstrate that: (1) []he is a member of a protected

class; (2) []he was subject to unwelcome harassment; (3) the harassment occurred because of [his protected trait]; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it." *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003).  Again, the standard is the same under Title VII and the D.C. Human Rights Act.  *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 102 (D.D.C. 2010).  And this is a high standard for plaintiffs to ultimately overcome.

"The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment'"—and that "'isolated incidents (unless extremely serious) will not amount to'" a hostile work environment.  *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Still, "although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own."  *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

Fosque's claims resist dismissal.  By his account, he was falsely accused of sexual assault.  Compl. ¶¶ 13–15.  The officer who made that accusation later admitted that he "made the whole thing up."  *Id.* ¶ 26.  Another officer falsely "claimed [Fosque] had admitted to the assault."  *Id.* ¶¶ 22–23.  Based on these deliberately false statements, the police department investigated and suspended him.  *Id.* ¶ 56.  That disciplinary process lasted several months, during which Fosque's status remained uncertain until he was finally terminated.  *See id.* ¶ 60.

According to Fosque, he endured this treatment because he is gay, a fact that was "common knowledge" at the police department.  *See id.* ¶ 12.

Fosque has plausibly pled all the elements of his hostile work environment claims. *See Lester*, 290 F. Supp. 2d at 22.  At summary judgment, he will need to bolster his theory that the alleged conduct was sufficiently "extreme to amount to a change in the terms and conditions of employment."  *See George*, 407 F.3d at 416 (cleaned up).  Considering the allegations Fosque has provided, that will be a tall order.  *See Arero v. Lake*, 804 F. Supp. 3d 106, 129 (D.D.C. 2025) ("The caselaw sets a high bar for prevailing on a hostile work environment claim.").  For now, though, his claims squeak by.  *See Wise v. Ferriero*, 842 F. Supp. 2d 120, 126–27 (D.D.C. 2012) (denying motion to dismiss hostile work environment claim where plaintiff alleged, among other things, that he was subjected to "threats of discipline based on false accusations").

## C.

End with retaliation.  Title VII forbids employers from discriminating against their employees for "oppos[ing] any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a).  To establish retaliation, a plaintiff must show (1) that he opposed a practice he reasonably thought violated Title VII; (2) that the defendant took adverse action against him; and (3) that the defendant acted because of the plaintiff's opposition to the practice. *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).  Once again, the same analysis applies under the D.C. Human Rights Act.  *See Burrell v. Shepard*, 321 F. Supp. 3d 1, 9 (D.D.C. 2018).  Retaliation claims "face[] a relatively low hurdle at the motion to dismiss stage."  *Jones v. Bernanke*, 685 F. Supp. 2d 31, 40 (D.D.C. 2010) (collecting cases).

Fosque contends that the D.C. Housing Authority retaliated against him when it finalized his termination.  Roughly three months before, Fosque received a Proposed Notice of

Termination based on the sexual assault report—which he appealed in an email to Chief Reese. Compl. ¶¶ 22, 24.  In his appeal, Fosque "assert[ed] that the allegations against him were false and motivated by discrimination." *Id.* ¶ 76.  Yet, in late July 2024, the D.C. Housing Authority terminated Fosque, "falsely claiming they never received his appeal." *Id.* ¶ 27.

All told, Fosque's retaliation claims overcome the dismissal stage's low bar.  Drawing all reasonable inferences in Fosque's favor, he plausibly alleges that he engaged in protected activity when he appealed his termination and complained about "discrimination"—especially because his sexual orientation was "common knowledge" throughout the police department.  *See id.* ¶¶ 12, 76.  Fosque has also done enough to establish a causal link between his appeal and the D.C. Housing Authority's decision to finalize his termination while ignoring his discrimination complaint.  *See, e.g.*, *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016) (concluding that plaintiff sufficiently pled causation by alleging that he was disciplined after complaining about discriminatory treatment); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010) (holding that plaintiff had done enough to survive a motion to dismiss by claiming that "as a result of having engaged in a protected activity . . . he suffered retaliation in the form of reassignment" roughly four months later).

To be sure, the D.C. Housing Authority "might very well rebut [Fosque's] claim on summary judgment." *See Ho*, 106 F.4th at 55.  At that stage, it may build out its argument that there is insufficient causality between Fosque's appeal and his final termination.  "But that is for discovery to uncover." *See id.*  For now, as with Fosque's other claims, "the facts pled in this complaint, taken in totality, have nudged [his] claim[s] across the line from conceivable to plausible." *See id.* (cleaned up).

**IV.**

For these reasons, it is hereby

**ORDERED** that the District of Columbia Housing Authority's [6] Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**; it is further

**ORDERED** that Fosque's claims against the District of Columbia Housing Authority may proceed; and it is further

**ORDERED** that the District of Columbia Housing Authority Police Department is **DISMISSED** from this case.

Dated: April 21, 2026                                       
                                      TREVOR N. McFADDEN, U.S.D.J.

9